IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-HC-2171-FL

| | | |
|---|---|---|
| ABDULKADIR SHARIF ALI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ERIK HOOKS, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on respondent's motion for summary judgment (DE 7), filed pursuant to Federal Rule of Civil Procedure 56. The issues raised have been fully briefed and are ripe for decision. For the following reasons, the court grants respondent's motion.

## STATEMENT OF THE CASE

On September 20, 2017, petitioner, a state inmate proceeding pro se, filed the instant habeas corpus petition pursuant to 28 U.S.C.§ 2254. Petitioner challenges his disciplinary convictions for substance possession, possession of cell phone, and unauthorized tobacco use, which he received at Caledonia Correctional Institution ("Caledonia C.I.") on March 15, 2017. The court conducted its initial review of the petition on May 3, 2018, and allowed the matter to proceed.

On June 1, 2018, respondent filed the instant motion for summary judgment, arguing that petitioner's disciplinary proceedings and convictions did not violate petitioner's constitutional rights. Alternatively, respondent asserts that the petition should be dismissed because petitioner failed to exhaust his state court remedies prior to bringing this action. In support of the motion, respondent filed memorandum of law, statement of material facts, and appendix. Respondent's

appendix included disciplinary hearing and appeal record, as well as pertinent North Carolina Department of Public Safety ("DPS") policies and procedures. Petitioner filed response in opposition on August 21, 2018, which included memorandum of law, statement of material facts, and appendix. Petitioner's appendix included additional records from his disciplinary proceedings and excerpts from pertinent DPS policies and procedures.

## STATEMENT OF FACTS

On February 22, 2017, Caledonia C.I. officials searched respondent's single-occupancy cell and found a package containing 96 Suboxone strips, 30 Ecocet pills, one ounce of marijuana, a small amount of tobacco, and a cell phone. (Resp't's App., Ex. 1 (DE 10-1) at 18).[1] Petitioner was charged with the following offenses: 1) A-12 disciplinary offense for substance possession; 2) A-16 disciplinary offense for possess audio/image device; and 3) B-16 disciplinary offense for unauthorized tobacco use. (Id. at 15). Caledonia C.I. officials held petitioner's disciplinary hearing on March 15, 2017. (Id. at 12). The summary of the record developed at the disciplinary hearing is as follows:

> C/O DEON FLOOD STATED ON 2/22/17 AT APPROXIMATELY 1445 HRS, HE WAS CONDUCTING A ROUTINE SEARCH IN UNIT 2B BLOC, CELL # ASSIGNED TO ABDULKADIR ALI #1431404. DURING HIS SEARCH HE FOUND (96) HITS OF [SUBOXONE], (30) [ECOCET] PILLS, LARGE AMOUNT [OF] TOBACCO & A LARGE AMOUNT OF MARIJUANA AND A CELL PHONE. INMATE ALI IS CHARGED WITH AN A12, A16 AND A B16.
>
> . . .

---

[1] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

THE DHO EXPLAINED THE CHARGES, DISCIPLINARY AND APPEAL RIGHTS TO I/M ALI. I/M PLED NOT GUILTY TO THE A12, A16 AND B16 OFFENSE[S]. THE INMATE WAS AFFORDED HIS RIGHTS DURING THE DISCIPLINARY PROCESS. THE DHO EXPLAINED THE EVIDENCE TO THE INMATE. INMATE STATED DURING THE HEARING NONE OF THE ITEMS WAS HIS. INMATE MADE A WRITTEN STATEMENT.

INMATE ABDULKADIR ALI STATED THAT ON 2-22-17 OFFICER FLOOD[,] UNIT MANAGER II CHRIS JONES[,] AND UNIT MANAGER I RIOS DID A CELL SEARCH OF INMATE'S ASSIGNED CELL. THERE WERE NO CAMERAS IN SEGREGATION NOR [DID] THE STAFF VIDEO RECORD THEIR ALLEGED FINDINGS & [THE INMATE] WAS NOT WITNESS TO THIS SEARCH BECAUSE HE WAS DETAINED IN THE SHOWER. THESE CONTRABAND ITEMS DON'T BELONG TO HIM & [HE] WAS NEVER ISSUED A PROPER CELL INSPECTION WITH ITS PROPER FORM, TO WHICH HE NEVER SIGNED ANYTHING [WITH] RESPECT TO THE STATUS OF THIS CELL PRIOR TO BEING PLACED IN SEGREGATION. INMATE['S PRIOR] BUNK WAS 2C8 & HIS BED WAS IN A VERY COMMON AREA ACCESSIBLE TO ALL INMATES. IF HE SAID [CONTRABAND] WAS IN MY PROPERTY, THEN WHY DID SGT. PITTMAN NOT DO A THOROUGH INVENTORY OF MY PROPERTY. SURELY HE SHOULD & WOULD HAVE FOUND THE ITEMS IN QUESTION. I/M REQUEST THAT ALL HIS PHONE RECORDS & LOGS BE CHECKED & MATCHED TO HIS PHONE PIN ALL CALLS MADE THROUGH GLOBAL TEL LINK. INMATE CHECKED YES FOR A STATEMENT FROM SGT. PITTMAN.

SGT PITTMAN STATED ON 2/20/17 DID A SEARCH OF INMATE ALI'[S] PROPERTY. AT THE TIME SHE WAS WORKING 3 BLOCKS & [INVENTORYING] OTHER PROPERTY AS WELL DUE TO STAFF SHORTAGE. C/O PITTMAN STATED SHE CHECKED IT AS THOROUGHLY [AS POSSIBLE], BUT IT'S STILL [POSSIBLE] THAT SHE COULD HAVE MISSED SOME THINGS DUE TO HER WATCHING THREE OTHER BLOCKS @ THE SAME TIME. THE PROPERTY WAS SECURE IN THE SGT.'S OFFICE ON AREA 1 SIDE. INMATE CHECKED YES FOR LIVE WITNESS FROM SGT PITTMAN. THE DHO DENIED LIVE WITNESS DUE TO OFFICER PITTMAN HAS A STATEMENT IN THE

DISCIPLINARY PACKAGE. OFFICER PITTMAN'S STATEMENT WAS REFERENCES TO [sic]. INMATE CHECKED YES FOR PHYSICAL EVIDENCE VIA CELL [INSPECTION] SHEET AND VIDEO OF FINDINGS. ATTACHED TO THE DISCIPLINARY PACKAGE IS A COPY OF THE CELL CONDITION SHEET. THERE WAS NO VIDEO RECORDING OF THE INVENTORY THAT WAS CONDUCTED. INMATE CHECKED NO FOR STAFF ASSISTANCE. A STATEMENT WAS OBTAINED FROM OFFICER PITT, U/M II CHRIS JONES AND U/M I RAFAEL SANTORIOS.

C/O W. PITT STATED 2/22/17 @ APPROX. 1425 HRS, WHILE [ASSISTING] DURING A SINGLE CELL SEARCH OF 4B2, ASSIGNED TO INMATE ALI, HE FOUND A BLACK S.V.P. TOUCH SCREEN CELL PHONE WATCH WITH (5) SIM CARDS & (1) SD MEMORY CARD HIDDEN INSIDE INMATE ALI'S LEGAL MAIL. THESE ITEMS [ARE] CONSIDERED CONTRABAND & WERE TURNED OVER TO THE OIC.

MR. JONES STATES, ON 2/22/17, OFC.'S FLOOD & PITT . . . SEARCHED INMATE ALI & HIS CELL, 4B2. DURING THEIR []SEARCH THEY DISCOVERED A CELLPHONE, 96 [SUBOXONE] STRIPS, 30 ECOCET PILLS, MARIJUANA & TOBACCO. THE CONTRABAND WAS DISCOVERED INSIDE INMATE ALI'S PROPERTY.

MR. SANTORIOS STATED ON 02/22/17 AT APPROX. 1425 HRS, HE SUPERVISED OFFICER FLOOD AND OFFICER PITT CONDUCTING A SEARCH OF INMATE [ABDULKADIR] ALI'S CELL# 2 IN RESTRICTIVE HOUSING. PRIOR TO THE SEARCH, MR. RAFEAL SANTORIOS STATED [HE] CHECKED THE CELL CONDITION CARD IN/OUT SHEET. THE SEARCH WAS CONDUCTED DUE TO INFORMATION GATHERED THAT THE OFFENDER IN #2 HAD A PACKAGE DROPPED OFF TO HIM. AS STAFF ENTERED THE CELL, YOU COULD SMELL A STRONG ODOR THAT SMELLED LIKE MARIJUANA. DURING THE SEARCH OFC. FLOOD DISCOVERED WHAT APPEARED TO BE AN OUNCE OR MORE OF A STICKY GREEN LEAFY SUBSTANCE WITH A VERY PUNGENT SMELL OF MARIJUANA. THIS WAS FOUND IN A BOX OF TEA BAGS, 96 [SUBOXONE] STRIPS WRAPPED IN PLASTIC, 30 PILLS THAT WAS LATER IDENTIFIED AS ECOCET, AND A SMALL AMOUNT OF TOBACCO. OFC. PITT DISCOVERED A WATCH PHONE WITH NO BANDS, 5 SIM

> CARDS & A MEMORY CARD. ALL CONTRABAND WAS TURNED OVER TO MANAGEMENT. BASED ON THE REPORTING PARTY'S STATEMENT AND THE INVESTIGATING OFFICER'S REPORT, INMATE ALI IS FOUND GUILTY OF THE A12, A16 AND B16. PENALTY IMPOSED TO DETER THIS TYPE OF BEHAVIOR IN THE FUTURE. INMATE UNABLE TO SIGN FORMS DUE TO RESTRAINTS. INMATE RECEIVED A COPY OF PUNISHMENTS IMPOSED, RECORD OF HEARING, AND APPEAL FORM. THIS WAS WITNESSED BY ALM16.
>
> CONTRABAND HANDLED ACCORDING TO CURRENT NCDPS POLICY.

(Resp't's App., Ex. 1 (DE 10-1) at 12-13).

Following petitioner's convictions, the Disciplinary Hearing Officer ("DHO") sanctioned petitioner with the following: 1) 60 days segregation; 2) loss of 110 days of good-time credit; 3) 140 hours of extra duty; 4) suspension of telephone, recreation and visitation privileges for 180 days; 5) suspension of canteen privileges for 120 days, and 6) 6 months of limited draw. (Id. at 10-11). Petitioner's disciplinary convictions were upheld on appeal. (Id. at 2)

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading" but "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248-49;

5

see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.     Analysis

Petitioner alleges that his disciplinary hearing and conviction violated his rights under the Due Process Clause of the Fourteenth Amendment. Specifically, petitioner argues that there was insufficient evidence to convict him of the A12, A16, and B16 disciplinary convictions. Petitioner also asserts that he was not provided sufficient notice of the charges, and that prison officials improperly denied his requests to obtain exculpatory evidence and to present argument at the hearing.

The Due Process Clause of the Fourteenth Amendment mandates several procedural safeguards before an inmate may be punished for violating prison disciplinary rules with the loss of a protected liberty interest, such as earned good-time credit, or with deprivation of property. Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974). Under the Wolff standard, an inmate is entitled to the following: 1) written notice of the charges at least 24 hours in advance of the hearing; 2) a written statement by the fact finders as to the evidence relied on and reasons for disciplinary action; and 3) to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Id. at 564-566.

Decisions by a disciplinary board to revoke good-time credits pass scrutiny under the Due Process Clause if there is some evidence in the record to support the conclusions. Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985). Federal courts will not review the accuracy of the DHO's fact finding de novo or for clear error, and determining whether the

standard is satisfied does not require examination of the entire record or weighing of evidence. See Baker v. Lyles, 904 F.2d 925, 932 (4th Cir. 1990). Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [DHO]." Id. (quotation omitted).

  1. Sufficiency of the Evidence

The court begins with petitioner's challenge to the sufficiency of the evidence. As noted, the DHO's findings survive a due process challenge if there is "some evidence" in the record to support the conclusions. Walpole, 472 U.S. at 454. Here, prison officials searched petitioner's cell and found numerous illegal drugs, a cell phone, and tobacco. Petitioner does not appear to dispute that the contraband was found in his cell or that he was the only occupant of the cell, but argues that prison officials or other inmates must have planted the contraband because it did not belong to him. The DHO considered this argument and rejected it. (Resp't's App., Ex. 1 (DE 10-1) at 12-13). Where the DHO relied on the investigating officers' statements that the contraband was found in a "package" dropped off for petitioner, in his single-occupancy cell, and found petitioner's version was not credible, the court finds the DHO's conclusions were supported by "some evidence." See Baker, 904 F.2d at 932-33 (holding prison officials' decision to credit officers' testimony over petitioner's contrary assertions satisfies the "some evidence" standard); White v. Wright, 150 F. App'x 193, 199 (4th Cir. 2005) ("In order for White to survive summary judgment, he must adduce evidence showing that Lt. Wright deliberately fabricated or falsified information in the investigation of White. White cannot support his claim with unsupported allegations and speculation of fabrication.").

2. Procedural Safeguards

Petitioner also argues that he was not provided sufficient notice of the charges and that prison officials denied his requests to gather exculpatory evidence and present testimony at the hearing. As to the notice issue, petitioner contends that he did not receive sufficient notice of the A16 charge for possession of a cell phone because the notice of charges document stated only that he was charged with "A-16 (Audio/Video Device)." (Pet'r's App., Ex. 3 (DE 17-1) at 1). Petitioner's assertions are belied by the record. The investigating officer's report states petitioner reviewed photocopies of all the contraband found in his cell two weeks before the hearing. (Resp't's App., Ex. 1 (DE 10-1) at 17). And petitioner's own written statements, which he submitted prior to the hearing, requested access to the data found on the cell phone. (Id. at 27). Petitioner's request for data extraction from the confiscated cell phone establishes that he was provided sufficient notice of the A16 offense.

As to the claim that petitioner was not allowed to obtain exculpatory evidence prior to the hearing, the Due Process Clause does not require prison officials to provide petitioner access to every piece of potentially exculpatory evidence. Wolff, 418 U.S. at 566; Wise v. Carpenter, No. 86-7381, 1988 WL 4574, at *3 (4th Cir. Jan. 19, 1988) ("[W]e do not interpret Wolff to include a Brady-style right to exculpatory evidence"); see also Johnson v. Warden, FCI Williamsburg, No. C/A 1:13-3347-JFA-SVH, 2014 WL 4825926, at *2 (D.S.C. Sept. 24, 2014) ("Wolff stands for the proposition that a prisoner is not guaranteed unfettered access to exculpatory evidence in the context of a disciplinary proceeding."), aff'd sub nom., Johnson v. Cruz, 597 F. App'x 161 (4th Cir. 2015). To succeed on a claim that prison officials wrongfully denied petitioner access to exculpatory evidence, petitioner must show, among other things, that his ability to present a defense was

"harmed" by the alleged errors. Brown v. Braxton, 373 F.3d 501, 508 (4th Cir. 2004) (holding petitioner must show how he was "harmed" by disciplinary hearing officer's refusal to permit live testimony where written statements were available); Piggie v. Cotton, 344 F.3d 674, 678 (7th Cir. 2003) (applying harmless error review to alleged due process violations in prison disciplinary proceeding). Petitioner has not met this standard.

Petitioner asserts that he should have been allowed to examine the contents of the cell phone, which may have established that it belonged to another inmate. Petitioner also notes that officer Pittman could have testified at the hearing that petitioner's property was not properly supervised when it was transferred to his new cell, and thus the contraband could have been planted before his transfer. But as explained above, the DHO considered and rejected petitioner's argument that the cell phone was planted in his cell or belongings. (Resp't's App., Ex. 1 (DE 10) at 12-13). The DHO report also expressly references petitioner's requests to examine the cell phone and officer Pittman's statements that he "could have missed" the contraband. (Id.) The DHO, however, found petitioner guilty despite petitioner's arguments that such evidence could have exculpatory value. (Id. at 13). In sum, the DHO determined petitioner's version that an unidentified inmate or prison official planted drugs and a cell phone in his property not credible, and there is no indication that the evidence petitioner was not allowed to present at the hearing would have affected that determination. Thus, even assuming the DHO erred by rejecting petitioner's requests to examine the cell phone or call officer Pittman as a live witness, petitioner has not demonstrated that he was harmed by that decision. See Brown, 373 F.3d at 508.

Petitioner also claims that he was not permitted to testify at the hearing. The DHO report states that petitioner testified at the hearing that the contraband items did not belong to him.

9

(Resp't's App., Ex. 1 (DE 10) at 12). The DHO also reviewed petitioner's written statements and arguments, and rejected petitioner's claims that the contraband was planted. (Id. at 12-13). Even assuming the DHO refused petitioner's attempts to present additional argument and testimony at the hearing, petitioner has not shown how such additional testimony or argument would have been helpful to his defense. Brown, 373 F.3d at 508.

As for the remaining Wolff requirements, petitioner received a written report by the DHO describing the evidence relied on and the reasons for the disciplinary action. (Resp't's App., Ex. 1 (DE 10-1) at 12-13). Thus, there is no due process violation, and the court grants respondent's motion for summary judgment.[2]

B.   Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the

---

[2] Respondent also asserts that petitioner failed to exhaust his state court remedies prior to bringing this action. The court, however, finds it appropriate to address the merits in this instance. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust remedies available in the courts of the State.").

issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issues are adequate to deserve encouragement to proceed further. Accordingly, the court denies a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the court GRANTS respondent's motion for summary judgment (DE 7). A certificate of appealability is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 18th day of March, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge